## Case No. 393.

### The ANGLO NORMAN.

[4 Sawy. 185.][1]

District Court, D. California. Feb. 8, 1877.

CARRIER OF PASSENGERS—"SEEN DANGERS"—CONTRIBUTORY NEGLIGENCE.

1. The carrier of passengers is bound to exact care in providing the proper means of approaching his vessel, and of ascending to or descending from it. But this duty only arises where by contract or usage he is required to be in readiness to receive his passengers.

2. Where a passenger voluntarily encounters "a seen danger," and receives an injury in consequence of his own carelessness or awkwardness: Held, that he is guilty of contributory negligence, and cannot recover.

In admiralty.

C. T. Botts and D. T. Sullivan, for libellants.

C. Temple Emmet, for claimant.

HOFFMAN, District Judge. I have carefully perused the voluminous depositions taken in this case, and the elaborate briefs of the advocates.

I see no reason to modify the opinion intimated at the hearing, to the effect that the gangway, in passing over which the accident occurred, was not such a means of getting on board his vessel as the carrier was

[1][Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

bound to provide. His contract and his duty as a carrier exacted the exercise of the utmost diligence and the employment of every means in his power to insure the safety of the passengers. The duty of a carrier of passengers requires him to exercise this diligence, not only in regard to the construction of his vehicle and its management after the passenger has come on board, but also in providing proper means of approaching it, and of ascending to and descending from it.

Thus, when a steamer took on board passengers from a hulk which the latter were obliged to cross to get on board, the carrier was held liable for injuries sustained by a passenger by falling down a hatchway negligently left uncovered.

If, then, the libellant in this case had repaired at the usual or appointed hour to the customary place of embarkation, and finding no other means of getting on board had, with due care, attempted to use the gangway constructed as described in this case, and had been injured in the attempt, I should have little doubt that the carrier would have been liable. It was not so obviously unsafe and dangerous as to indicate fool-hardiness on the libellant's part in attempting to use it rather than lose his passage. Any person of ordinary caution and prudence would probably have made a similar attempt. It had frequently been used on previous occasions by visitors to the ship, and twice by the libellant himself and his wife.

But the question in the case is, had the libellant the right, under the circumstances, to demand and expect that the carrier should be prepared to receive him as a passenger, and make that careful provision for his safety which the law exacts of him when he has entered upon the performance of his contract? The vessel lay at a wharf at the upper end of Darling harbor, above Darling harbor bridge, through which she passed by a draw-bridge. This wharf belonged to a railroad company, and was used exclusively in its business. The Anglo Norman was the first vessel of her size which had ever lain at the wharf; she was under charter, and had gone there to receive her cargo. The wharf was, as one of libellant's witnesses remarks, in "an out of the way place." It was approached by means of the railroad track which ran along it, and it could only be reached by climbing up some four feet and using the apertures between the timbers of which the wharf was constructed as steps. The testimony is clear that except in case of steamers and coasters having their own wharves, sea-going vessels almost invariably received their passengers after they hauled into the bay opposite the town, the passengers being conveyed to them in wherries, or, if numerous, in a tug. It is urged that the libellant had no knowledge of this usage. But it was his business to ascertain

when and how, according to the custom of the place, passengers were to go on board the vessel.

It appears to me that, under these circumstances, the libellant had no right to expect that the carrier should make the same provision for his safe ingress to the vessel as if the wharf had been in the usual place from which passengers were received on board, and the gangway the only means of getting on board furnished or contemplated by the carrier. I do not mean to assert that the libellant is to be regarded as a trespasser. He is to be regarded rather as a visitor, but not as entitled at that time to exact of the carrier the performance of his contract with that extraordinary diligence which the stringent rules of law require the carrier of passengers to exercise.

Undoubtedly, if the gangway had contained some secret defect, if the planks had been rotten or insecurely fastened, so as to create an unknown and unsuspected danger, the carrier would have been responsible. But it was exactly what it purported to be. The danger, if any, of using it with due circumspection, was apparent. That that danger was not great is shown by the fact that it was used on several previous occasions by the libellant and other visitors to the ship.

It would seem that if the accident had occurred to the libellant on any of his previous visits, he would have had the same right to recover as he now contends for. which would be in effect to declare that at all times after the passengers had engaged their passage, the ship was bound to furnish and maintain the same commodious and perfectly safe means of getting on board that she would be bound to provide after she had announced her readiness to receive the passengers, and to enter upon the performance of her contract, or after she was in such a position as, by the usage of the port, it would become her duty to receive them.

But if this view be erroneous, and if it be admitted that the ship was guilty of some negligence, it seems clear, under the authorities, that the libellant was guilty of contributory negligence. His negligence consisted either in attempting to use the gangway at all, if it was as unsafe as he now contends, or else in his manner of using it. It has already been observed that the insufficiency of the gangway, if it was insufficient, was apparent. That insufficiency consisted in its narrowness and the absence of rails.

The libellant, therefore. voluntarily encountered a "seen danger." The case seems closely analogous to that of the miner who persisted in working after being apprised that the supports of the mine were insecure, or to the numerous cases where passengers have attempted to alight from railroad cars when in motion. In some of these cases, the injured party has been held guilty of contributory negligence, notwithstanding that the carrier was in fault in not stopping, or in running by the station. In this case. the libellant was under no necessity of using the gangway. He could have waited and come on board the ship as the other passengers did, after she had come round to the bay opposite the town, or he could have demanded that other means of coming on board should be provided. There is some evidence tending to show that he was informed that the vessel was not ready to receive him. This he denies. It is apparent from all the circumstances that the master did not then expect passengers to come on board, or consider himself bound to provide for their reception.

It would seem clear. from the libellant's own testimony, that he attempted to use the gangway "in a careless. awkward manner." He ascended it nearly abreast of his wife. as he says, holding her arm, or as some of the witnesses assert, arm in arm. The chief danger lay in its narrowness. If he used it at all, he was bound to use it in a prudent and cautious manner, and with such circumspection as. its obvious condition required. Some of the witnesses testify that he admitted after the accident that it occurred by his own fault. That he was talking and laughing with his wife, and holding on to her arm, and through his own inattention he stumbled or lost his balance.

The libellant denies having made these admissions, but I think it clearly appears from all the circumstances of the case that he was awkward or careless in the mode of traversing the gangway. On any other supposition it is difficult to account for the accident. It had been frequently used by himself, and others, on previous occasions, and seems to have been broad enough for safety, if the requisite care had been observed.

I have little doubt that, under the evidence, a jury would find the libellant guilty of contributory negligence. If this be so, he cannot recover.

The damages that in any case I should feel justified in awarding would not be considerable. I cannot ascribe the subsequent miscarriage of the libellant's wife, more than two months afterward, to this accident. In a married life of less than two years, she had already experienced two miscarriages, and the length of time that intervened between the accident and its supposed effect render it highly improbable, if not absolutely impossible, that the latter could have been caused by the former. An award of damages founded on such an hypothesis would rest upon a conjecture of a possibility rather than upon proofs of a fact.